**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**


| | |
|---|---|
| **JEANETTE R.,** | * |
| | * |
| **Plaintiff,** | * |
| | *      **Civil No. TMD 18-3288** |
| **v.** | * |
| | * |
| | * |
| **ANDREW M. SAUL,** | * |
| **Commissioner of Social Security,** | * |
| | * |
| **Defendant.[1]** | * |
| | ************ |


**MEMORANDUM OPINION GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jeanette R. seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her applications for disability insurance benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 15) and Defendant's Motion for Summary Judgment (ECF No. 16).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 16) is

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security. He is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

**GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

# I

## Background

On August 28, 2017, Administrative Law Judge ("ALJ") Jack Penca held a hearing where Plaintiff and a vocational expert ("VE") testified. R. at 33-59. The ALJ thereafter found on October 18, 2017, that Plaintiff was not disabled from her alleged onset date of disability of May 2, 2015, through the date of the ALJ's decision. R. at 14-32. In so finding, the ALJ found that Plaintiff had the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; occasionally push or pull with the right leg; occasionally balance, stoop, kneel, crouch, or crawl; and have occasional exposure to extreme cold, vibration, and hazards." R. at 21. In light of this RFC and the VE's testimony, the ALJ found that Plaintiff could perform her past relevant work as a bookkeeper and a secretary. R at 26. The ALJ thus found that Plaintiff was not disabled from May 2, 2015, through October 18, 2017. R. at 26.

After the Appeals Council denied Plaintiff's request for review, Plaintiff filed on October 24, 2018, a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case then was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

## II

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[3]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a

---

[3] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## IV

### Discussion

Plaintiff contends that the ALJ erred in finding that her adjustment disorder and depression were non-severe impairments and in adopting a legally insufficient RFC assessment. Pl.'s Mem. Supp. Mot. Summ. J. 7-9, ECF No. 15-1. "The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.' A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'"

*Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1. In addition to the five-step analysis discussed above in Part II and outlined in 20 C.F.R. §§ 404.1520 and 416.920, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a. These regulations require application of a psychiatric review technique at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and at each level of administrative review. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment." *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1). If the claimant is found to have such an impairment, then the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four broad functional areas: (1) "understand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself." *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). According to the regulations, if the degree of limitation in each of the four areas is rated "none" or "mild," then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe," "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). If so, then the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's RFC. *Id.*

§§ 404.1520a(d)(3), 416.920a(d)(3). "The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas." *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)); *see Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 662, 659 (4th Cir. 2017).

Here, the ALJ found that Plaintiff's "medically determinable mental impairments of depressive disorder and adjustment disorder, considered singly and in combination, do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore nonsevere." R. at 20. In so finding, the ALJ "considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1)." R. at 20. "These four areas of mental functioning are known as the 'paragraph B' criteria" (R. at 20). *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E). The ALJ found that Plaintiff had "no limitation" in the four functional areas of (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself (R. at 20). *See* 20 C.F.R. §§ 404.1520a(c)(3)-(4), 416.920a(c)(3)-(4). The ALJ thus found that Plaintiff's medically determinable mental impairments were not severe. R. at 20.

In maintaining that the ALJ erred in finding that her mental impairments were not severe, Plaintiff essentially argues that the ALJ erred in determining that she had no limitation in each of the four mental functional areas. A finding of "no limitation" in one of the four areas means that the claimant is "able to function in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(F)(2)(a). The ALJ found that Plaintiff had no limitation in the area of understanding, remembering, or applying information

because she "alleged no problems with memory, understanding, or following instructions," "although her boyfriend reports that her memory is 'slow.'" R. at 20 (citing R. at 248-58, 269-86). The ALJ also noted that "[n]o deficits in memory are noted in [Plaintiff's] treatment records or the consultative examination report." R. at 20 (citing R. at 528-33, 615-32). Indeed, in July 2015 Plaintiff reported that she could pay attention for "as long as needed" and that doing so was "not a problem." R. at 253. She also reported that her ability to follow written and spoken instructions was "fine." R. at 253. In February 2016 Plaintiff reported, however, that she could not concentrate well because of her pain medications and that she could only pay attention for ten to twenty minutes at a time. R. at 274. She claimed that her ability to follow written instructions was "mostly ok" and that she usually would need spoken instructions to be repeated. R. at 274. In March 2016, however, Deborah Matthews, Ph.D., the consultative psychological examiner, observed no difficulties with Plaintiff's concentration or memory, and she opined that Plaintiff was capable of understanding and following simple instructions independently. R. at 532. In October 2016, Plaintiff could recall three objects after one minute. R. at 536, 632. Substantial evidence thus supports the ALJ's finding in this functional area.

The ALJ then found that Plaintiff had no limitation in the area of interacting with others because she "does not report problems getting along with other people, nor does her boyfriend." R. at 20 (citing R. at 248-58, 269-86). The ALJ noted that Plaintiff reportedly "had no problem getting along with others, including co-workers and supervisors in the past." R. at 20 (citing R. at 528-33). Plaintiff in fact reported in July 2015 and February 2016 that she got along "fine" with authority figures. R. at 254, 275. Dr. Matthews also noted in March 2016 that Plaintiff reported no problems with relating to co-workers and supervisors. R. at 532. Substantial evidence thus also supports the ALJ's finding in this functional area.

The ALJ next found that Plaintiff had no limitation in concentrating, persisting, or maintaining pace because she "alleges no problems with concentration or paying attention, although her boyfriend reports that her concentration is affected." R. at 20 (citations omitted). The ALJ found that "[n]o deficits in concentration are noted in [Plaintiff's] treatment records or the consultative examination report." R. at 20 (citing R. at 528-33, 615-32). The ALJ also found that "the medical evidence does not support [Plaintiff's] allegations regarding the impact of pain medication on her ability to concentrate." R. at 20. The ALJ found that Plaintiff's "allegations regarding the effect of pain medication on her ability to concentrate are inconsistent with the medical evidence." R. at 24. "There is no indication in her primary care or orthopedic records that [Plaintiff] reported any medication side effects or exhibited loss of concentration." R. at 24. "When documented, mental status findings have been normal. She discussed medication with the consultative psychologist, but [she] did not complain that it affected her concentration." R. at 24. Substantial evidence thus also supports the ALJ's finding in this functional area. *See* R. at 532, 632.

Last, substantial evidence supports the ALJ's finding that Plaintiff had no limitation in adapting or managing oneself. R. at 20. "She reports some problems with personal care due to her physical impairment, but [she] can take medication independently and can handle changes in routine." R. at 20 (citing R. at 248-58, 269-77).

Plaintiff nonetheless maintains that the ALJ "should also have accounted for time off task as well as unscheduled absenteeism." Pl.'s Mem. Supp. Mot. Summ. J. 9, ECF No. 15-1. The VE testified that a reduction in productivity of "15% to 20% or more . . . would be work preclusive." R. at 57. Two unscheduled absences per month also would preclude work. R. at 57. Plaintiff's treating orthopedist, John Klimkiewicz, M.D., opined in June 2015 that she likely

would be "off task" for only 5% of a typical workday because of interference with her attention and concentration from pain. R. at 463. According to Dr. Klimkiewicz, Plaintiff could perform work involving moderate stress. R. at 463. The doctor also opined that she would be absent from work about two days per month. R. at 463. In July 2017 Dr. Klimkiewicz opined that Plaintiff would be "off task" for "25% or more" of a typical workday and that she was capable of only "low stress" work. R. at 636. The ALJ, however, gave no weight to the doctor's opinions because "they are not consistent with his treatment notes. Moreover, the disparity between the two statements is not supported by any medical evidence." R. at 25. "There is also no support in the record for the off task limitations or unscheduled absences indicated by Dr. Klimkiewicz. His notes do not reflect that [Plaintiff] discussed her work habits with him and as discussed above, there is no support for any claims of lack of concentration." R. at 25. Substantial evidence supports the ALJ's specific and legitimate reasons for giving no weight to the doctor's opinions, which Plaintiff does not dispute. *See Sharp v. Colvin*, 660 F. App'x 251, 257 (4th Cir. 2016) (treating physician's treatment notes that were inconsistent with his contrary opinion constituted substantial evidence to support ALJ's decision not to give controlling weight to physician's opinion); *Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (per curiam) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001); *Craig*, 76 F.3d at 589-90).

Substantial evidence also supports the ALJ's undisputed finding that Plaintiff's "daily activities are not entirely consistent with her reported symptoms and limitations. She testified that she does household chores with breaks, and therapy records reflect that she adopted a dog in February 2017 and started dog obedience training with him in May." R. at 24 (citation omitted). "This level of functioning is not consistent with a disabling knee impairment" (R. at 24). *See*

*Ladda v. Berryhill*, 749 F. App'x 166, 173 n.4 (4th Cir. 2018) ("[T]he ALJ cited [Plaintiff's] daily activities for purposes of the credibility determination and not as examples of the functions [she] could perform for an entire day."). Thus, "the ALJ cited adequate evidence from the record to support his conclusion that [Plaintiff's] statements were not entirely credible." *Id.* at 171 n.3.

Plaintiff's argument that the ALJ erred in assessing her RFC thus is without merit. In assessing her RFC, the ALJ considered the treatment records, opinion evidence, hearing testimony, and her credibility (R. at 21-26). *See id.* at 172 ("[T]he ALJ in this case used evidence from the record to explain his finding that [the claimant] was capable of light work. For example, the ALJ noted that [the claimant] claimed that he could walk for only ten to fifteen minutes at a time and could not lift ten pounds, but he explained that the other evidence in the record, such as medical records and opinion evidence, did not fully substantiate these claims. The ALJ also explained the relative weight he assigned to the statements made by [the claimant], [the claimant's] treating physician, and the state agency medical consultants. The ALJ provided a sufficiently thorough discussion for us to agree that his conclusion that [the claimant] was limited to light work was supported by substantial evidence."). In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards here. Thus, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

# V

## **Conclusion**

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 16) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**. The Commissioner's final decision is **AFFIRMED**. A separate order will issue.

Date: December 30, 2019                           _____/s/_____
                                               Thomas M. DiGirolamo
                                               United States Magistrate Judge